## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CEDAR GROVE CAPITAL, LLC** | * | |
| | * | |
| *Plaintiff* | * | |
| | * | |
| **VERSUS** | * | **CIV. ACTION NO. _____** |
| | * | |
| **DONALD "DON" WENNER, DLP** | * | |
| **CAPITAL PARTNERS, LLC, DLP REAL** | * | |
| **ESTATE CAPITAL, INC., DLP LENDING** | * | |
| **FUND, LLC, DLP CAPITAL LENDING CH,** | * | |
| **LLC, BATON ROUGE VENTURES, LLC,** | * | |
| **AND CHARAL BATON ROUGE** | * | |
| **VENTURES, LLC** | * | |
| | * | |
| *Defendants* | * | |
| | * | |

---

### COMPLAINT FOR REVOCATORY ACTION AND UNDER THE LOUISIANA UNFAIR TRADE PRACTICES ACT, UNIFORM FRAUDULENT TRANSFER AND/OR CONVEYANCE ACT, AND FOR DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes Cedar Grove Capital, LLC ("**Cedar Grove**"), which respectfully submits this Revocatory Action, Complaint Under the Louisiana Unfair Trade Practices Act, Uniform Fraudulent Transfer and/or Conveyance Act, and for Declaratory Judgment, and in support thereof represents as follows:

### PARTIES, JURISDICTION AND VENUE

**1.**

Made Defendants herein are the following:

i. Donald "Don" Wenner ("**Don Wenner**"), an individual domiciled in the State of Florida with a home address of 146 Marshall Creek Drive, St. Augustine, FL 32095 and a business address of at 405 Golfway West Dr., St Augustine, FL 32095;

ii.    <u>DLP Capital Partners, LLC</u> ("**DLP Capital**"), a Delaware limited liability company, with its principal place of business located at 405 Golfway West Dr., St. Augustine, FL, 32095;

iii.    <u>DLP Real Estate Capital, Inc.</u> ("**DLP Real Estate Capital**"), a Florida corporation with its principal place of business located at 405 Golfway West Dr., St Augustine, FL 32095;

iv.    <u>DLP Lending Fund, LLC</u> ("**DLP Lending**"), a Delaware limited liability company, with its principal place of business located at 405 Golfway West Dr., St Augustine, FL 32095;

v.    <u>DLP Capital Lending CH, LLC</u> ("**DLP Lending CH**"), a Florida limited liability company with its principal place of business located at 405 Golfway West Dr., St. Augustine, FL 32095;

vi.    <u>Baton Rouge Ventures, LLC</u> ("**BRV**"), a Florida limited liability company, with its principal place of business located at 405 Golfway West Dr., St Augustine, FL 32095; and

vii.    <u>Charal Baton Rouge Ventures, LLC</u> ("**Charal BRV**"), a Delaware limited liability company, with its principal place of business located at 5420 Las Palmas Ave., Wellington, FL 33449;

(collectively, "**Defendants**", and Don Wenner, DLP Capital, DLP Real Estate Capital, DLP Lending, DLP Lending CH, and BRV are sometimes referred to as the "**DLP Family**").

**2.**

This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because

- 2 -

this is a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

**3.**

Plaintiff, Cedar Grove, is a limited liability company organized under the laws of the State of Delaware. Cedar Grove has two members, Aaron Gorin and Steven Levitz, both of whom are domiciled in New York.

**4.**

To the best of Cedar Grove's knowledge, information and belief at this time, no member of any Defendant is a citizen of or domiciled in the State of New York.

**5.**

BRV is authorized and doing business in Louisiana. Defendant, BRV has three (3) members: (i) DLP Capital Partners, LLC, (ii) DLP Preferred Returns Equity Fund, LLC, and (iii) Good as New Ventures, LLC. DLP Capital Partners, LLC is a Delaware limited liability company with four (4) members: DLP Real Estate Capital, Inc., a Florida corporation with its principal place of business in Florida, Robert Peterson, a citizen and domiciliary of Florida, Barry DeGroot, a citizen and domiciliary of Florida, and the Wenner Family Trust I, whose trustee is Don Wenner with real and substantial control over the trust's assets and who is a citizen and domiciliary of Florida. DLP Preferred Returns Equity Fund, LLC has one (1) member: DLP Capital Partners, LLC. Good as New Ventures, LLC has two (2) members: Don Wenner, a citizen and domiciliary of Florida, and DLP Capital Partners, LLC.

**6.**

Charal BRV is authorized and doing business in Louisiana. Defendant, Charal BRV has one (1) member: Charal Properties, LLC, a Minnesota limited liability company, that has two (2)

members: M. Allen Hatfield, a citizen and domiciliary of Florida, and Charlene Hatfield, a citizen and domiciliary of Florida.[1]

**7.**

Defendant, DLP Capital is a Delaware limited liability company with three (3) members: Wenner Family Trust I, Robert Peterson, and Barry DeGroot. Don Wenner is the trustee of the Wenner Family Trust I who has real and substantial control over the trust's assets, and is a citizen and domiciliary of the State of Florida. Barry DeGroot and Robert Peterson are both citizens and domiciled in the State of Florida.

**8.**

Defendant, DLP Real Estate Capital Inc. is a Florida corporation with its principal place of business in Florida at 405 Golfway West Drive, Suite 300, St. Augustine, FL 32095.

**9.**

Defendant, DLP Lending is a Delaware limited liability company whose members are unknown but are, upon information and belief, domiciled in Florida and located at 405 Golfway West Drive, Suite 300, St. Augustine, FL 32095.

**10.**

Defendant, DLP Lending CH is a Florida limited liability company whose members are unknown but are, upon information and belief, domiciled in Florida and located at 405 Golfway West Drive, Suite 300, St. Augustine, FL 32095.

---

[1] The primary and permanent residence of Mr. and Mrs. Hatfield is in Wellington, Florida, and they have a secondary residence in Delano, Minnesota.

**11.**

Defendant, Don Wenner, individually and as trustee of the Wenner Family Trust I with real and substantial control over the trust's assets, is a citizen and domiciliary of the State of Florida. Alternatively, beneficiaries of the Wenner Family Trust I are Don Wenner, his wife, Carla Wenner, and their three children, all of whom reside in and are domiciled in Florida.

**12.**

To the best of Cedar Grove's knowledge, information and belief, complete diversity exists with respect to Cedar Grove and Defendants.

**13.**

An actual justiciable controversy exists between Cedar Grove and Defendants within the meaning of 28 U.S.C. § 2201, and this Court accordingly has the power to decide the portion of this action which requests declaratory relief pursuant to 28 U.S.C. § 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

**14.**

As established below, this Court has specific jurisdiction over Defendants based on their conduct in Louisiana giving rise to Cedar Grove's claims.

**15.**

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omission giving rise to this action occurred and a substantial part of the property that is the subject of the action is situated within East Baton Rouge, a part of this judicial district.

**FACTUAL ALLEGATIONS**

**16.**

BRV and Charal BRV (together, "**Judgment Debtors**") are co-owners in indivision of

- 5 -

5302409.v5

certain immovable property consisting of four (4) multi-family residential apartments located at the following municipal addresses: (1) 3225 Victoria Drive, Baton Rouge, LA ("**BV I**"); (2) 12254 La Margie Avenue, Baton Rouge, LA ("**BV II**"); (3) 567 Sharp Lane, Baton Rouge, LA (the "**PE I**"); and (4) 655 Sharp Lane, Baton Rouge, LA ("**PE II**," and, together with BV I, BV II, and PE I, the "**Properties**").

### 17.

Judgment Debtors are tenants-in-common and formed in October, 2018, as shell companies or a single purpose entities created for the sole purpose of holding title to the Properties. Judgment Debtors do not have any employees, do not manage the Properties (the Properties are managed by DLP Property Management LLC ("**DLP Property Manager**")), and do not have any operational control with respect to the Properties. Charal BRV is a passive investor in the enterprise and is controlled and/or directed by BRV with respect to any decisions related to the Properties. BRV functions solely through other persons, namely Don Wenner, DLP Capital and myriad affiliated companies using the "Dream Live Prosper" or "DLP" moniker owned and/or controlled by Don Wenner.

### 18.

On October 24, 2018, Judgment Debtors entered into that certain Property Management Agreement with DLP Property Manager, another DLP affiliate, wherein DLP Property Manager was engaged to manage all aspects of the Properties and paid a fee of 4% of the collected gross revenues from the Properties. Under the Property Management Agreement, Don Wenner was identified as the person to receive notice on behalf of both Judgment Debtors and DLP Property Manager and is either directly or indirectly a controlling principal of DLP Property Manager.

5302409.v5

**19.**

On or about November 27, 2018, Judgment Debtors purchased the Properties pursuant to four (4) Cash Sale Deeds recorded in the public records of East Baton Rouge Parish as Original 501, Bundle 12927, Original 500, Bundle 12927, Original 499, Bundle 12927, and Original 498, Bundle 12927. The listed consideration for each purchase was "the sum of Ten Dollars and No/100 ($10.00) Dollars, the receipt and sufficiency of which is hereby acknowledged."

**20.**

On or about November 27, 2018, Judgment Debtors granted two mortgages in favor of Greystone Servicing Corporation, Inc. ("**Greystone**") encumbering the Properties as follows:

- Act of Multifamily Mortgage, Assignment of Leases and Rents, and Security Agreement was recorded in the mortgage records of East Baton Rouge Parish as Original 503, Bundle 12927, encumbering the properties referred to herein as PE I and PE II (the "**Park East Mortgage**" or "**PE Mortgage**"); and

- Act of Multifamily Mortgage, Assignment of Leases and Rents, and Security Agreement was recorded in the mortgage records of East Baton Rouge Parish as Original 505, Bundle 12927, encumbering the properties referred to herein as BV I and BV II (the "**Bellemont Victoria Mortgage**" or "**BV Mortgage**").

(together, the PE Mortgage and the BV Mortgage are sometimes referred to herein as the "**Greystone Mortgages**", which were later assigned to related/affiliated entities, Greystone Bridge Funding X LLC and then Greystone Mezzanine Loan Aggregator LLC).

**21.**

The Park East Mortgage secured a loan by Greystone to Judgment Debtors in the amount of $13,260,000.00 (the "**Park East Loan**" or "**PE Loan**"). The PE Loan was originally set to

- 7 -

mature on November 1, 2020.

**22.**

The Bellemont Victoria Mortgage secured a loan by Greystone to Judgment Debtors in the amount of $17,740,000 (the "**Bellemont Victoria Loan**" or "**BV Loan**"). The BV Loan was originally set to mature on November 1, 2020.

**23.**

Although the properties encumbered by the Greystone Mortgages differed, each of the Greystone Mortgages contains a cross-collateralization provision, rendering such a distinction academic only.

**24.**

Judgment Debtors financed the acquisition of the Properties through $31,000,000 in short-term, bridge loan financing from Greystone, and the balance of the purchase price was paid from contributions by the respective equity owners equal to the percentages of the tenant-in-common relationship between BRV (25.54%) and Charal BRV (74.46%) by their members.

**25.**

Effective February 19, 2020, Judgment Debtors and Cedar Grove entered into a written agreement for the purchase of the Properties (the "**Purchase Agreement**" or the "**PSA**") for the sum of $42,500,000.00. Cedar Grove provided $300,000 to Madison Title Company as a deposit.

**26.**

On September 1, 2020, after a dispute arose with respect to the PSA, Judgment Debtors filed a complaint for declaratory judgment against Cedar Grove seeking to obtain the $300,000 deposit in the action entitled, *Baton Rouge Ventures, LLC and Charal Baton Rouge Ventures, LLC v. Cedar Grove Capital, LLC*, No. 3:20-cv-00628-JWD-EWD (M.D. La.) (the "**Lawsuit**").

- 8 -

**27.**

On October 14, 2020, Cedar Grove filed its Answer and Counterclaim in the Lawsuit against Judgment Debtors asserting claims for breach of the PSA, seeking specific performance thereof, and damages resulting from the breach (including bad faith).

**28.**

On October 14, 2020, Cedar Grove recorded in the public records of East Baton Rouge that certain Notice of Lis Pendens at Original 724, Book 13059, which Notice of Lis Pendens was amended to correct the indexing of the Notice of Lis Pendens with respect to the counterclaim filed by Cedar Grove in the Lawsuit.  The Amended Notice of Lis Pendens was recorded as Original 973, Bundle 13278.

**29.**

The Lawsuit was tried before a jury in this Honorable Court on September 5-7, 2023, and the jury returned a unanimous verdict in favor of Cedar Grove and against Judgment Debtors on both Judgment Debtors' original demand and Cedar Grove's counterclaim.  The jury rejected Judgment Debtors' claims against Cedar Grove.  For Cedar Grove's counterclaim, the jury found Judgment Debtors were in breach of the PSA and awarded Cedar Grove specific performance under the PSA for the Properties, $1,000,000 in foreseeable damages, and $6,000,000 in unforeseeable bad faith damages for the breach of the PSA.  The jury verdict was memorialized in a Final Judgment signed on September 18, 2023, wherein this Honorable Court entered a judgment in favor of Cedar Grove and against Judgment Debtors dismissing Judgment Debtors' claims against Cedar Grove with prejudice and awarding Cedar Grove: (A) $1,000,000 in foreseeable damages; (B) $6,000,000 in unforeseeable bad faith damages, (C) pre-judgment interest, and (D) post-judgment interest.  The Court also allowed Cedar Grove to apply for costs and an award of

attorney's fees which application remains pending before the Court (the "**Judgment**").

**30.**

On December 8, 2022, as trial in this matter was approaching and well after the Notice of Lis Pendens had been recorded on October 14, 2020, Judgment Debtors purportedly obtained four (4) separate loans from a related and/or affiliated entity, DLP Lending, as follows:

- Secured Note payable by you to the order of DLP Lending in the principal amount of $11,437,500, which matures on January 1, 2025 (the "**DLP PE I Loan**");

- Secured Note payable by you to the order of DLP Lending in the principal amount of $6,375,000, which matures on January 1, 2025 (the "**DLP PE II Loan**");

- Secured Note payable by you to the order of DLP Lending in the principal amount of $11,175,000, which matures on January 1, 2025 (the "**DLP BV I Loan**"); and

- Secured Note payable by you to the order of DLP Lending in the principal amount of $11,775,000, which matures on January 1, 2025 (the "**DLP BV II Loan**").

(collectively, the DLP PE I Loan, DLP PE II Loan, DLP BV I Loan, and DLP BV II Loan are referred to herein as the "**DLP Loans**").

The face amount of the DLP Loans to the Judgment Debtors total $40,762,500.

**31.**

The DLP Loans were purportedly secured by, *inter alia*, four (4) Multiple Indebtedness Mortgages, which were recorded in the public records of East Baton Rouge Parish on December 19, 2022 (the "**DLP Mortgages**").  The DLP Mortgages have cross-collateralization clauses.

**32.**

The DLP Mortgages include:

5302409.v5

| Amount Secured | Property Encumbered | Original/Bundle |
|:---:|:---:|:---:|
| $11,437,500.00 | PE I | 499/13230 |
| $6,375,000 | PE II | 500/13230 |
| $11,175,000.00 | BV I | 501/13230 |
| $11,775,000.00 | BV II | 502/13230 |

**33.**

Each of the DLP Mortgages secures a purported debt in favor of DLP Lending, a related and/or affiliated entity with common ownership and/or control as BRV.

**34.**

The incurrence of the indebtedness secured by the DLP Mortgages increased the liabilities of the Judgment Debtors by $40,762,500.00, thereby rendering the Judgment Debtors insolvent.

**35.**

On or about June 27, 2023, DLP Lending assigned the DLP Mortgages to DLP Lending CH, another entity that is a related or affiliated entity of Judgment Debtors and under the common ownership, management and control of DLP Capital and Don Wenner.

**36.**

A portion of the DLP Loans from DLP Lending was apparently later used to pay off the BV Loan which resulted in the release of the BV Mortgage owned by Greystone (or its assigns) on or about July 19, 2023.

**37.**

DLP Lending, DLP Lending CH, DLP Capital, DLP Real Estate Capital, and BRV are all part of a vertically integrated business model and share substantially the same beneficial owners.

**38.**

For the DLP Family, the business model is to separate out each individual aspect of the ownership of property into its own separate company in a scheme to limit each business's liability.

**39.**

For instance, one business owns the Properties, one business operates the Properties, one business is a brokerage to marketing and sell the Properties, and other businesses handle debt obligations.

**40.**

In essence, the DLP Loans to Judgment Debtors was the equivalent of the DLP Family moving money from one DLP pocket to another DLP pocket.

**41.**

The ultimate effect and intent underlying the DLP Loans and the DLP Mortgages was to create new encumbrances in favor of DLP Lending (and, subsequently, DLP Lending CH) that clouds title to the Properties and over-encumbers the Properties with debt far exceeding the value of the Properties to hinder and restrict Cedar Grove's ability to enforce its Judgment for specific performance and Cedar Grove's ability to execute on its money judgment against Judgment Debtors through the sale of the Properties.

**42.**

For the DLP Loans, however, there was no actual transfer of funds by DLP Lending or DLP Lending CH to Judgment Debtors, except to pay off the debt evidenced by the BV Loan owned by Greystone (or its assignee). Alternatively, in the event that monies in excess of the Greystone payoff were advanced to Judgment Debtors, those amounts were then advanced, transferred, and/or distributed to the DLP Family and/or other affiliates and/or members of

Judgment Debtors.

**43.**

The net effect was that Judgment Debtors encumbered the Properties and incurred liabilities in the form of promissory notes secured by the Properties without actually receiving any benefit in the form of loan proceeds (apart from the payment of one of the Greystone loans).

**44.**

The purpose of this scheme was to hinder, delay, and frustrate the ability of Cedar Grove to take ownership of the Properties should Cedar Grove be successful in the Lawsuit (which it was) and thwart Cedar Grove's ability to recover damages by executing on the judicial mortgage that now encumbers the Properties since Judgment Debtors removed all equity from the Properties in bad faith.

**45.**

At the conclusion of the jury trial in the Lawsuit, the jury found that Judgment Debtors' prior course of conduct when dealing with Cedar Grove in connection with the Purchase Agreement and these Properties constituted bad faith. Defendants' conduct in the confection of the DLP Loans is further evidence of bad faith.

## <u>COUNT 1: REVOCATORY ACTION</u>

**46.**

The incurrence of new debt in connection with the execution of the DLP Mortgages caused and/or increased the insolvency of Judgment Debtors. Intent and fraud are not required elements of a revocatory action under La. Civ. Code art. 2036, as the revocatory action criteria is objective and may be satisfied by an act done negligently or intentionally.

**47.**

The Properties are Judgment Debtors' only assets.

**48.**

The Properties were, at the time of the execution of the DLP Mortgages, subject to an enforceable claim for specific performance, claims for millions in damages, and a Notice of Lis Pendens, limiting their value as no true third-party buyer or lender would be interested in acquiring or refinancing the Properties under the circumstances.

**49.**

At the time that the new debt was incurred for the DLP Loans, Judgment Debtors had pre-existing and substantial debt owing to Greystone under the PE Loan and BV Loan.

**50.**

The incurrence of the indebtedness secured by the DLP Mortgages increased the liabilities of the Judgment Debtors by $40,762,500.00, thereby rendering the Judgment Debtors insolvent.

**51.**

At the time of incurring the DLP Loan obligations and over-encumbering the Properties, Judgment Debtors knew that, in addition to Cedar Grove's claim for specific performance, it faced potential damages for millions of dollars in the Lawsuit and in advance of the trial.

**52.**

Judgment Debtors owed other debts as well.

**53.**

Pursuant to La. C.C. art. 2036, an obligee "has the right to annul an act of the obligor . . . made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency."

**54.**

As an entity under common ownership and direction as BRV, DLP Lending knew Judgment Debtors were insolvent, knew of the claims at issue in the Lawsuit, and knew of the Notice of Lis Pendens.

**55.**

In addition, DLP Lending entered into these non-arm's length transactions with Judgment Debtors outside of, and inconsistent with, any normal and customary credit and underwriting policies and standards to facilitate and conspire with Judgment Debtors goal of thwarting Cedar Grove's ability to recover on its claims in the Lawsuit.

**56.**

Furthermore, the grant of the DLP Mortgages and the accompanying incurrence of debt was, at least partially, gratuitous. Notwithstanding the subsequent payment of the debt secured by the BV Mortgage, Judgment Debtors did not receive any benefit for the incurrence for the remaining DLP debt.

**57.**

Alternatively, to the extent any payments or advances were made to Judgment Debtors, those monies were then transferred, distributed and/or paid to other persons, including but not limited to entities within the DLP Family and/or members of Judgment Debtors, which should be revoked, set aside, and/or clawed back.

**58.**

Based on the allegations set forth in this Complaint, Cedar Grove prays for and is entitled to a judgment revoking the incurrence of debt to DLP Lending and/or DLP Lending CH and annulling the DLP Mortgages and revoking any and all transfers to entities within the DLP Family

and/or members of Judgment Debtors.

## COUNT 2: LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTIONS LAW UNDER LA. R.S. 51:1401, *ET SEQ.*

**59.**

Judgment Debtors did not receive any benefit for the purported "debt" it incurred with DLP Lending.

**60.**

Judgment Debtors incurred this debt largely to frustrate the Judgment of this Court and prevent Cedar Grove from either taking ownership of the Properties or collecting the money judgment against Judgment Debtors through a judicial sale of their only asset, the Properties.

**61.**

The conduct detailed in the factual allegations herein has also allowed Judgment Debtors to appeal the Judgment without a bond or security while restricting Cedar Grove from executing on the Judgment. This scheme was facilitated by, through, and at the direction of the DLP Family.

**62.**

Don Wenner, DLP Capital and/or DLP Real Estate Capital conspired and/or employed BRV's sister/related/affiliated companies, DLP Lending and/or DLP Lending CH, to essentially create a shield made out of debt. The debt, in turn, is owned by the DLP Family, namely DLP Capital and Don Wenner. As Charal BRV stood to gain from these protections, it acquiesced to this conduct with full knowledge and approval of this scheme and conspiracy.

**63.**

This conduct is demonstrative of precisely the type of bad faith conduct that the jury condemned in the Lawsuit.

5302409.v5

**64.**

DLP Lending, DLP Lending CH, DLP Capital, DLP Real Estate Capital and BRV are all part of the same vertically integrated series of companies. There was either: (1) no real business purpose to the DLP Loans made to Judgment Debtors; or (2) those loans were made on paper only, without a corresponding benefit to Judgment Debtors.

**65.**

DLP Lending and Judgment Debtors agreed to record the DLP Mortgages in the public records of East Baton Rouge Parish to give the appearance that the DLP Mortgages secure debt that does not exist to perpetuate this falsehood and scheme in bad faith.

**66.**

La. R.S. 51:1405 declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." to be unlawful.

**67.**

La. R.S. 41:1409(A) permits any person who suffers an ascertainable loss of money or property "as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 41:1405, may bring an action . . . to recover actual damages."

**68.**

Although the statutory definition of an "unfair" practice is broad and subjective, the purpose of La. R.S. 51:1405, *et seq.* is to deter injury to competition, to protect consumers, to foster competition by halting unfair business practices and sanctioning businesses which commit them, and to curb business practices that lead to monopoly and unfair restraint of trade within a certain industry.

5302409.v5

**69.**

What constitutes an unfair trade practice is determined on a case-by-case basis. An "unfair trade practice" exists if the practice offends public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumer or competitor.

**70.**

Judgment Debtors and DLP Lending/DLP Lending CH's abuse of the public records doctrine to frustrate this Court's Judgment constitute a deceptive and unfair business practice.  It pollutes and misrepresents the public records of East Baton Rouge with mortgages that do not secure real debt, but are intended solely to prevent collection, rather than enforce it, and are recorded to further frustrate or restrain Cedar Grove from exercising its right to specific performance and/or to collect damages.  This type of misrepresentation and deception are unfair trade practices in Louisiana, and this conduct will be shown to be fraudulent.

**71.**

Judgment Debtors and DLP Lending entered into the above-described transactions with the specific intent to frustrate, hinder, and restrict Cedar Grove's ability to execute on its Judgment. As Charal BRV agreed, expressly or tacitly, to this scheme as the parties conspired to thwart Cedar Grove's ability to execute on the Judgment, Charal BRV was a direct participant in this bad faith scheme and conspiracy alongside the DLP Family.

**72.**

As the DLP Mortgages have not been released or otherwise amended to reflect the true nature of the existing debt, and as Defendants knowingly and intentionally employed this unfair or deceptive act in anticipation of a judgment that only continues after the Judgment was rendered in favor of Cedar Grove, this unfair trade practice continues unabated.  Indeed, this conduct was

done to hinder and delay Cedar Grove's execution of the Judgment and, in turn, allow Judgment Debtors to appeal the Judgment without providing a bond or security as a result of their nefarious conduct to over-encumber the Properties in advance of the trial.

**73.**

Cedar Grove is also concerned that the Judgment will cause Judgment Debtors to allow the Properties to go in disarray and disrepair to further decrease the value of the Properties. For this reason and the reasons set forth hereinabove, and in accordance with La. R.S. 51:1408(A)(2), the Court is empowered to appoint a receiver to oversee the Properties to maintain the value of the Properties. Cedar Grove intends to file a motion to appoint a receiver for the Properties.

**74.**

Cedar Grove also seeks treble damages under La. R.S. 51:1409 against Judgment Debtors and against the DLP Family, as Cedar Grove will put the attorney general on notice of the proscribed conduct addressed herein and to the extent Defendants do not correct the public records, renounce and/or withdraw and/or modify the encumbrances to reflect the true debt encumbered by the DLP Mortgages, if any, release any of the DLP Mortgages that do not secure any actual debt, and allow Cedar Grove to move forward with its collection efforts in connection with the Judgment, treble damages should be awarded in favor of Cedar Grove against Defendants, *in solido*, or against Judgment Debtors, DLP Lending and/or DLP Lending CH as these parties acquiesced to the proscribed conduct described throughout this Complaint in violation of LUTPA and facilitated the conspiracy to commit this unlawful and deceptive trade practice.

**75.**

Cedar Grove also seeks reasonable attorney's fees and costs as provided by statute.

**76.**

The DLP Family, including but not limited to DLP Lending and/or DLP Lending CH, are

not licensed with the Louisiana Office of Financial Institutions, are not federally insured financial

institutions, are not registered and/or not regulated by any other state or federal regulators who

possess authority to regulate unfair or deceptive trade practices.

**77.**

Alternatively, to the extent any party with the DLP Family, including but not limited to,

DLP Lending and/or DLP Lending CH, claim any type of exemption under LUTPA, LUTPA is

not and was never intended to provide exemptions or insulate affiliated companies who conspire

to intentionally commit the unlawful and deceptive trade practice described in this Complaint in

bad faith and through non-arms-length transactions beyond the purview of any regulatory

authority.

## COUNTS 3, 4: UNIFORM FRAUDULENT CONVEYANCE ACT
## AND UNIFORM FRAUDULENT TRANSFER ACT

**78.**

The Uniform Fraudulent Transfer Act has been adopted by Florida and Delaware, where

the DLP Family of companies are organized. *See* Fla. Stat. Ann. § 726.101 to 726.112; *see also* 6

Del.C. §§ 1301 to 1311.  The Uniform Fraudulent Conveyance Act has been adopted in New York,

where Cedar Grove is organized. *See* Debtor and Creditor Law, §§ 270, *et seq.* (Uniform Voidable

Transactions Act).

**79.**

Section 4 of the Uniform Fraudulent Conveyance Act (the "**UFCA**") provides that "[e]very

conveyance made and every obligation incurred by a person who is or will be thereby rendered

insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration."

**80.**

Section 5 of the UFCA provides that "[e]very conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."

**81.**

Section 7 of the UFCA provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished form intent presumed by law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

**82.**

Defendants have violated the UFCA based on the allegations set forth throughout this Complaint, and, as a result, Cedar Grove is entitled to obtain and seek the following relief under Section 10 of the UFCA: (a) to restrain Judgment Debtors from disposing of the Properties, (b) to appoint a receiver to take charge of the Properties, (c) to set aside the DLP Mortgages or, at a minimum, set aside the DLP Mortgages to the extent fair consideration was not provided and/or was only provided as a simulation to then be distributed to entities within the DLP Family, and annual the obligations associated therewith, and (d) to make any order which the circumstances of this case may require.

**83.**

Pursuant to Section 7 of the Uniform Fraudulent Transfer Act ("**UFTA**"), Cedar Grove is

entitled to obtain the following relief for the conduct alleged in this Complaint: (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee; (3)(i) an injunction against further disposition by Judgment Debtors or a transferee, or both, of the asset transferred or other property; (3)(ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or (3)(iii) any other relief the circumstances may require.  In addition, as Cedar Grove has obtained a Judgment against Judgment Debtors, and if the court so orders, Cedar Grove may levy execution on the asset transferred or its proceeds.

## COUNT 5: DECLARATORY JUDGMENT TO PIERCE VEIL AND FIND THE DLP FAMILY A SINGLE BUSINESS ENTITY

**84.**

BRV is part of the DLP Family, a series of interconnected and interrelated entities that operate under the common ownership and direction of DLP Capital. DLP Capital is, in turn, owned largely by Don Wenner, as trustee for a trust established by him and for his benefit.  Don Wenner is the founder and CEO of DLP Capital, is either directly or indirectly a controlling principal of the DLP Family, and otherwise directs the management and control of the DLP Family.

**85.**

Good As New Ventures, LLC owns 72.61% of BRV. Good as New Ventures, LLC is, in turn, owned 95% by Don Wenner, individually, and 5% by DLP Capital. DLP Capital is the Manager of Good As New Ventures, LLC.

**86.**

DLP Capital is the Manager of BRV and owns a 5.65% interest in BRV.

- 22 -

**87.**

DLP Capital is, in turn, managed by DLP Real Estate Capital and owned by DLP Real Estate Capital (1% interest), Wenner Family Trust I (84% interest), and two other individuals, Robert Peterson and Barry DeGroot (collectively, a 15% interest). Mr. DeGroot is the Managing Principal and Chief Legal Counsel for DLP Capital (and the DLP Family) and Robert Peterson is the Chief Financial Officer (CFO) of DLP Capital (and the DLP Family). At the trial for the Lawsuit, Mr. DeGroot was the only person to testify in-person for Judgment Debtors at trial.

**88.**

DLP Lending and DLP Lending CH are also under the common ownership and control of DLP Capital and Don Wenner.

**89.**

It was at Don Wenner and DLP Capital's direction and control that DLP Lending, DLP Lending CH, and Judgment Debtors entered into the above-described transactions with the specific intent to frustrate the collection efforts of Cedar Grove. Charal BRV, tacitly and/or expressly, approved of this scheme and bad faith misconduct for its own benefit and gain, ratified this conduct, and conspired with these same parties.

**90.**

The jury's finding of bad faith in the Lawsuit against Judgment Debtors was based on the conduct and under the direction and control of DLP Capital and/or DLP Real Estate Capital and/or Don Wenner and/or Barry DeGroot.

**91.**

Although the individual members of a limited liability company are generally not liable for a debt, obligation, or liability of the company, this corporate veil may be pierced by courts where

members of an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person.

**92.**

Relief under a single business enterprise theory is available under certain circumstances that include: (1) where the members of the LLC commit fraud or deceit on a third party such that justice demands the corporate veil be pierced to allow the third party to recover from shareholders personally; and (2) where the shareholders disregard the corporate formalities such that the shareholders and corporation become indistinguishable. The single business enterprise doctrine is also appropriate to pierce the corporate veil when a group of affiliated companies conspire to avoid and resist creditors using bad faith schemes and misconduct.

**93.**

Don Wenner is the ultimate owner of the DLP Family and directed, controlled and otherwise participated and approved of this scheme to have Judgment Debtors enter into debt agreements and mortgages with no basis in reality for the purpose and with the intent of frustrating any judgment of this Court, including the Judgment in favor of Cedar Grove.

**94.**

Accordingly, Cedar Grove is entitled to and prays for a judgment piercing the corporate veil of Judgment Debtors (or any one of them) and finding the DLP Family and/or Defendants responsible and liable, *in solido*, for the Judgment rendered against Judgment Debtors and in favor of Cedar Grove in the Lawsuit.

**95.**

Alternatively, Cedar Grove seeks to pierce the corporate veil of Judgment Debtors (or any one of them) and finding DLP Capital, DLP Real Estate Capital and/or Don Wenner, personally

responsible and liable, *in solido*, for the Judgment rendered against Judgment Debtors and in favor of Cedar Grove in the Lawsuit.

**96.**

Alternatively, Cedar Grove seeks to pierce the corporate veil of Judgment Debtors (or any one of them) and finding DLP Lending and DLP Lending CH responsible and liable, *in solido*, for the Judgment rendered against Judgment Debtors and in favor of Cedar Grove in the Lawsuit.

**97.**

Under Louisiana law, the single business enterprise doctrine is a theory for imposing liability on two or more business entities when they act as one.

**98.**

The doctrine is applicable where a corporation is so organized and controlled as to make it merely an instrumentality of adjunct of another corporation.

**99.**

Each entity in the DLP Family is under the common control of DLP Capital and/or Don Wenner and shares common directors or officers and employees.

**100.**

Furthermore, each company in the DLP Family is subject to unified administrative control and each one has complementary business functions.

**101.**

Furthermore, certain companies in the DLP Family are inadequately capitalized.

**102.**

Each member of the DLP Family shares employees, common offices, and centralized accounting.

- 25 -

5302409.v5

**103.**

Don Wenner has admitted that he controls of DLP Capital and DLP Real Estate Capital through his trust, has admitted that DLP Real Estate Capital is the parent company of ten to twelve operating entities affiliated with DLP Capital (which include, *inter alia*, DLP Realty, DLP Real Estate Management, DLP Construction Management, DLP Lending, DLP Capital Partners Alliance Loan Servicing, and Alliance Property Transfer), has admitted that DLP operates a vertically integrated business model involving real estate, and has admitted that entities such as BRV are formed for the purchase of real estate but controlled by Don Wenner, DLP and/or its network of affiliated entities.

**104.**

Finally, the DLP Family constitutes a single enterprise which has been excessively fragmented into several separate businesses. In essence, every function of the business has its own company, rather than being one single company. This was clearly done with the intent to frustrate creditors or, at a minimum here, was used with the clear intent to frustrate Cedar Grove's ability to execute on the Judgment.

**<u>BAD FAITH</u>**

**105.**

Based on the allegations set forth in this Complaint, Cedar Grove specifically seeks damages, both foreseeable and unforeseeable, in connection with Defendants' bad faith.

**106.**

La. C.C. art. 1997 states that "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Under the factual circumstances hereinabove, Defendants are liable for all foreseeable and unforeseeable damages

- 26 -

based on their bad faith and for reasonable attorney's fees.

## JURY DEMAND

### 107.

A trial by jury is hereby demanded on those issues so triable to a jury and is specifically requested in connection with this action.

## RESERVATION OF RIGHTS

### 108.

Cedar Grove reserves all rights against (i) DLP Property Manager, (ii) Charal Properties, LLC, (iii) M. Allen Hatfield, (iv) Charlene Hatfield, (v) Barry DeGroot, and/or any other persons as it pertains to: (1) the allegations contained in this Complaint, (2) to the extent the Properties become in a state of disrepair to the detriment of Cedar Grove and it's rights provided in the Judgment, (3) to the extent these persons are found to have controlled, decided or otherwise participated in the scheme described herein, and/or (4) to the extent such persons are determined or found to have received any funds, payments, or advances in connection with the debt described in this Complaint.

**WHEREFORE**, Plaintiff, Cedar Grove Capital, LLC, respectfully prays that after due proceedings are had, there be a final judgment entered in its favor and against Defendants, (i) Donald "Don" Wenner, (ii) DLP Capital Partners, LLC, (iii) DLP Real Estate Capital, Inc., (iv) DLP Lending Fund, LLC, (v) DLP Capital Lending CH, LLC, (vi) Baton Rouge Ventures, LLC and/or (vii) Charal Baton Rouge Ventures, LLC, *in solido*, holding:

1. Judgment in favor of Cedar Grove revoking, rescinding, or nullifying the transactions related to the DLP Loans and DLP Mortgages and any transfers of money or other property from the Judgment Debtors to any of their members or affiliates;

2.    Judgment in favor of Cedar Grove finding the actions detailed in the Complaint constitute a violation of Louisiana's prohibition on unfair trade practices and awarding Cedar Grove a money judgment against Defendants, as well as treble damages and reasonable attorney's fees, as will be established at trial;

3.    Judgment in favor of Cedar Grove that the actions detailed in the Complaint constitute a violation of the Uniform Fraudulent Conveyance Act and/or Uniform Fraudulent Transfer Act entitling Cedar Grove to the relief detailed in the Complaint and revoking, rescinding, or nullifying the transactions related to the DLP Loans and DLP Mortgages and any transfers of money or other property from the Judgment Debtors to any of their members or affiliates;

4.    Judgment in favor of Cedar Grove to pierce the corporate veil of Judgment Debtors (or any one of them) and declaring the DLP Family and/or Defendants a single business enterprise responsible and liable, *in solido*, for the Judgment rendered against Judgment Debtors and in favor of Cedar Grove in the Lawsuit and said Judgment shall be enforceable against each entity comprising the DLP Family and/or Defendants;

5.    Alternatively, judgment in favor of Cedar Grove to pierce the corporate veil of Judgment Debtors (or any one of them) and declaring DLP Capital, DLP Real Estate Capital and/or Don Wenner, personally responsible and liable, *in solido*, for the Judgment rendered against Judgment Debtors and in favor of Cedar Grove in the Lawsuit and said Judgment shall be enforceable against DLP Capital, DLP Real Estate Capital and/or Don Wenner;

6.    Alternatively, judgment in favor of Cedar Grove to pierce the corporate veil of Judgment Debtors (or any one of them) and finding DLP Lending and DLP Lending CH responsible and liable, *in solido*, for the Judgment rendered against Judgment Debtors and in favor of Cedar Grove in the Lawsuit and said Judgment shall be enforceable against DLP Lending and/or DLP Lending CH;

7.    For a finding of bad faith against Defendants and/or the DLP Family and/or Judgment Debtors;

8.    For all costs and court costs of this proceeding to the Defendants, as well as the recovery of all fees, expenses, or other charges to be incurred in connection with this action, and to tax all costs and court costs taxable by statute or otherwise against Defendants;

9.    For pre-judgment interest on the date of judicial demand, as well as all post-judgment interest available under the law;

10.   For a trial by jury on all issues so triable; and

11. For all other relief, fees and damages which are just and equitable under the circumstances.

Respectfully submitted,

**TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.**

By: **/s/ Jonathan A. Moore**
     Brett P. Furr (#17572)
     Jonathan A. Moore (#34686)
     William Hardy Patrick IV (#38862)
     450 Laurel Street, 8th Floor (70801)
     P.O. Box 2471
     Baton Rouge, LA 70821
     Phone: (225) 387-3221; Fax: (225) 346-8049
     brett.furr@taylorporter.com
     jonathan.moore@taylorporter.com
     will.patrick@taylorporter.com

     *Attorneys for Plaintiff, Cedar Grove Capital, LLC*

**Notice of Filing Sent to:**

**LOUISIANA ATTORNEY GENERAL**
Attn: Consumer or Public Protection Section
1885 North 3rd Street,
Baton Rouge, LA 70802